IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**UNITED STATES OF AMERICA**,                     3:10-CR-00018-KI

                      Plaintiff(s),                     OPINION AND ORDER ON
                                                  FORFEITURE

    v.

**PIERS THEODORE BAKER**,

                      Defendant(s).


    Dwight C. Holton
    United States Attorney
    District of Oregon
    Amy Potter
    Katherine C. Lorenz
    Leslie J. Westphal
    U.S. Attorney's Office
    1000 S.W. Third Avenue, Suite 600
    Portland, Oregon   97204

        Attorneys for Plaintiff

Lori S. Baker
1631 NW 19th Street
Gresham, OR 97030

William J. Baker
4979 SW Madrona St.
Lake Oswego, OR 97035

       Pro se Petitioners


King, Judge:

    Defendant Piers Baker (hereinafter referred to as "defendant") entered a guilty plea on January 26, 2011 to one count of manufacturing 50 or more marijuana plants and one count of impeding federal officers in the performance of their official duties. He signed a Preliminary and Final Order of Forfeiture, agreeing to forfeit real property at 64801 E. Riverside Drive, Brightwood, Oregon (hereinafter referred to as the "Brightwood property") and $31,215.17 in U.S. currency. Lori Baker (defendant's wife) and William Baker (defendant's father) both filed documents indicating an interest in the forfeited items. Ms. Baker indicates she has an interest in the U.S. currency (without specifying how much) and Mr. Baker reports he has a claim to money for work he performed, and mortgage payments he made, on the Brightwood property (in the total amount of $9,285). Pending before me is the government's Motion to Dismiss [46]. For the following reasons, I grant the government's motion.

## BACKGROUND

    Defendant was arrested on September 28, 2009 on state charges. On September 29, officers executed a search warrant at the Baker's home and interviewed Ms. Baker. On September 30, police seized $31,215.17 from defendant's bank account. On October 5,

Page 2 - OPINION AND ORDER ON FORFEITURE

defendant transferred his ownership interest in the Brightwood property to Mr. Baker.  The

Bargain and Sale Deed reflects that Mr. Baker paid no consideration for the property.

On October 6, detectives investigated the Brightwood house and found extensive

evidence that one of the rooms had been used to grow marijuana.  Electrical records in Ms.

Baker's name showed a dramatic increase in kilowatts from May through July, 2009.  Ms. Baker

informed the police that no tenants were renting the Brightwood house during the summer of

2009.  Neighbors revealed that cars frequented the Brightwood property for short visits and that

defendant had been seen exchanging "baggies" for money.[1]

On January 21, 2010, defendant was indicted in the District of Oregon for manufacturing

marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and for assaulting a federal

officer, in violation of 18 U.S.C. § 111(a) and (b).  On January 26, 2011, defendant entered a

guilty plea to a two-count superseding information charging knowing and intentional

manufacture of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), and impeding

federal officers, in violation of 18 U.S.C. § 111(a)(1).  Both the original indictment and the

superseding information contained a criminal forfeiture allegation that the Brightwood property

and $31,215.17 in U.S. currency were used to commit or facilitate the commission of the crimes.

In his plea agreement, defendant agreed that both the Brightwood property and the

$31,215.17 constituted "the proceeds of [his] criminal activity; or were used to facilitate [his]

_____

[1]Some of these facts are contained in the Affidavit of Scott McGeachy, attached to the
government's memorandum as Exhibit 1, and in the Presentence Report prepared by the U.S.
Probation Office prior to sentencing.  Pursuant to 21 U.S.C. § 853(n)(5) the Court is permitted to
consider the facts from the underlying criminal proceeding.

criminal activity[.]" Plea Agmt. 3 [29]. The parties jointly recommended a sentence of 120

months and, on April 4, 2011, the Court sentenced defendant to 120 months' imprisonment.

## LEGAL STANDARDS

When convicted of specified crimes, the defendant must forfeit to the government

property derived from or obtained as a result of the crime or used to commit or facilitate the

crime. 21 U.S.C. § 853(a). The government's interest vests at the moment the crime occurs. Id.

at § 853(c). Where third parties claim an interest in property forfeited in a criminal proceeding,

the court holds an ancillary hearing to determine the ownership of the asset. Id. at § 853(n).

Third parties are permitted to contest the forfeiture, and attempt to prove that the asset belongs to

them and not the defendant. If the property belongs to the defendant, the order forfeiting the

property to the government is valid. 21 U.S.C. § 853(n)(7). Otherwise, the order of forfeiture

must be amended to account for the third party's interest.

As an initial matter, the claimant must have standing in the ancillary proceeding in order

to make a claim of ownership. The claimant's burden is "not a heavy one; the claimant need

demonstrate only a colorable interest in the property, for example, by showing actual possession,

control, title or financial stake." United States v. Real Property Located at 5208 Los Franciscos

Way, 385 F.3d 1187, 1191 (9th Cir. 2004).

If the claimant establishes standing, he or she then bears the burden of proving ownership

by a preponderance of the evidence. United States v. Nava, 404 F.3d 1119, 1125 (9th Cir. 2005).

The way in which a third party proves ownership is on one of two theories: (1) he or she has a

superior legal interest in the property; or (2) he or she is a bona fide purchaser for value without

reasonable cause to believe the property was subject to forfeiture. 21 U.S.C. § 853(n)(6)(A)-(B).

Page 4 - OPINION AND ORDER ON FORFEITURE

In drug forfeiture cases, the court must look first to state law to evaluate the claimant's interest in the property, and then to federal law.  United States v. Lester, 85 F.3d 1409, 1412 (9th Cir. 1996).

## DISCUSSION

The government attacks both the claimants' standing and their ownership claims in the property.

I.    Lori Baker

Ms. Baker claims that she and defendant each borrowed $10,000 from their parents to purchase their first home in 2001.  In 2003, they refinanced, paid their parents back,[2] and put the rest in the bank.  The couple purchased a rental in Vancouver with some of the funds and rented it out.  They then sold their first home and purchased a home in Gresham.  They sold the Vancouver home in 2006, and earned $43,014.88 in profit.  In 2007, they refinanced their Gresham home and obtained $29,756.36 in equity.  Ms. Baker reports that she "put sweat equity into all these homes."  Pet. 4 [40].[3]  She also reports that in 2000, defendant received a permanent partial disability award of $29,347.50 from SAIF from an on-the-job injury.  At the hearing, Ms. Baker explained that her name was on the titles to the properties, along with defendant's name, and that all the money from refinancing and selling homes over the years went into defendant's bank account.  At one point she took money out of an unspecified bank account, but defendant did not like how she spent the money so he removed her name from the account.

---

[2]At the hearing, Ms. Baker indicated they only paid her mother back.

[3]The petition does not contain page numbers.  Instead, I have referenced the PDF pagination.

Ms. Baker reported that defendant earned money from selling cars at auctions and gambling, and that he received a settlement for an on-the-job injury and a payment from his mother's estate.

The government seeks to dismiss the petition arguing Ms. Baker has no ownership interest in the bank account. The government points to statements Ms. Baker made to law enforcement reporting that she and defendant maintained separate bank accounts; the money she earned working at Fred Meyer went into her own bank account. She had no idea how much money was in defendant's account, she did not have access to the account or the statements, and she did not use the account in any way. She did believe there was a lot of money in the account due to prior home sales. She conceded that some of the proceeds were used to purchase other homes. She told the detective that she and defendant kept separate finances–defendant paid the mortgage on their home and she paid all other utility bills. They did not make joint spending decisions. In fact, when Ms. Baker asked defendant to pay a utility bill, he refused and she got behind. During the search warrant, police found a locked room in their Gresham home, which Ms. Baker could not access, containing financial documents and marijuana grow records.

Defendant had three bank accounts from 2006 through 2009. The money at issue here (the $31,215.17) was seized from the third of these accounts (the 3077 account). Initially, Ms. Baker's name was not on the first two accounts, but her name was added to these two accounts in May of 2008 (the 6267 account and the 3479 account). Ms. Baker's name was never on the third account. Defendant opened the third account on October 27, 2008 and it was funded from the other two accounts. The government contends its agent was able to trace a total of $58,660, made in deposits of between $100 to $4,000 consistent with drug trafficking, into these three bank accounts.

Under Oregon law, property owned solely in the name of one spouse belongs to that spouse. Kowaleski v. Kowaleski, 227 Or. 45, 58, 361 P.2d 64 (1961); United States v. $11,500.00 in U.S. Currency, ___ F. Supp. 2d ___, No. 3:10-cv-97-MA, 2011 WL 2729561, at *3 (D. Or. July 13, 2011) (noting that spouses may hold property separately during the course of a marriage under Oregon law). Here, Ms. Baker was not named on the bank account, she had no knowledge about the amount of money in the account, and she had no access to it. Nevertheless, I assume without deciding that Ms. Baker's interest in the money survived placement in defendant's private account.

I conclude, however, that even if Ms. Baker had an interest in the money from the property transactions, she has failed to meet her burden of showing by a preponderance of the evidence that the seized money was generated from the 2001 to 2007 property transactions. According to Ms. Baker's evidence, the last refinancing took place in 2007, two years before the government seized the bank account. The government's evidence is that the defendant deposited a total of $58,660 in small increments ranging from $100 to $4,000 between August 2007 and September 2009, which is more than the total seized from the account. Ms. Baker submitted no evidence disputing the total amount or the character of these deposits. She suggested only that the funds may have been legal proceeds from the defendant's car sales or gambling activities, but defendant already admitted the currency constituted the proceeds of his criminal acts or that the account was used in furtherance of his criminal activity. Ms. Baker has failed to show by a preponderance of the evidence that any money from the property transactions remained in defendant's account at the time of defendant's criminal activity.

In sum, Ms. Baker has failed to establish by a preponderance of the evidence that the legal right, title or interest in the bank account vested in her, rather than in defendant, or was superior to defendant's interest, at the time of the commission of the crimes for which defendant was convicted.

II.    William Baker

Mr. Baker claims he is owed $9,825 for materials he purchased to rehabilitate the Brightwood property and for making seven mortgage payments on the property for defendant. He is not attempting to recover for his labor.   He admits he has no lien.  Mr. Baker explained to the Court that defendant had evicted one tenant for growing marijuana in the house and that defendant never grew marijuana indoors.  At the time of defendant's arrest, Mr. Baker questioned whether the government had sufficient evidence to prove that the Brightwood property had been used as a grow house.  Mr. Baker thought he would have a better chance of securing repayment if he obtained an interest in the property.  He conceded that he and defendant knew defendant would probably be facing a lengthy prison sentence so Mr. Baker retained an attorney to assist in drafting the Bargain and Sale deed just after defendant was arrested.

With respect to the first prong of § 853(n)(6), Mr. Baker is a general unsecured creditor with no claim against the specific forfeited real property here.  DSI Assoc. LLC v. United States, 496 F.3d 175, 184 (2d Cir. 2007).  Since Mr. Baker failed to obtain a lien, he has no interest in the property recognized by Oregon law and has no standing to assert a claim.

As for the defendant's transfer of the Brightwood property to Mr. Baker after defendant was arrested, the question is whether Mr. Baker is a bona fide purchaser for value of the right, title, or interest in the property.  To be a bona fide purchaser, Mr. Baker must show he: "(1) . . .

Page 8 - OPINION AND ORDER ON FORFEITURE

has a legal interest in the forfeited property; (2) the interest was acquired as a bona fide purchaser for value; and (3) the interest was acquired at a time when the claimant was reasonably without cause to believe that the property was subject to forfeiture." United States v. Timley, 507 F.3d 1125, 1130-31 (8th Cir. 2007).

　　　　As an initial matter, Mr. Baker obtained the property for no consideration. A person who receives property as a gift cannot be a bona fide purchaser for value. United States v. Kennedy, 201 F.3d 1324, 1335 (11th Cir. 2000). Even if he could show he obtained the property for value, he could not show he purchased it without reasonable cause to believe it was subject to forfeiture. Mr. Baker knew his son had been arrested and that the police had seized his son's bank account. Although he thought the evidence was slim that the Brightwood property had been used to facilitate defendant's criminal activity, there is no question that Mr. Baker knew defendant was arrested for engaging in criminal activity and knew there was a possibility the property could be connected to the criminal activity. That is sufficient. See U.S. v. An Interest in the Real Property Located at 2101 Lincoln Blvd., Los Angeles, Cal., 729 F. Supp. 2d 1150, 1157-58 (C.D. Cal. 2010) (in evaluating analogous statutory language, concluded that knowledge of the law is irrelevant; what matters is claimant's knowledge that the property was involved in criminal activity or purchased with the proceeds of criminal activity).

///

///

Page 9 - OPINION AND ORDER ON FORFEITURE

**CONCLUSION**

For the foregoing reasons, the government's Motion to Dismiss [46] is granted.  Neither

Lori Baker nor William Baker are entitled to amendment of the forfeiture order.

IT IS SO ORDERED.

DATED this ___31st___ day of August, 2011.


 /s/ Garr M. King_____
Garr M. King
United States District Judge